UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
TARALE WULFF, NETZAI VARGAS
and JIMMY DEJESUS, on behalf of
themselves and all others similarly
Situated,

              Docket No. 10 Civ. 2559 (CM)

         Plaintiffs,

  -against-

17TH STREET ENTERTAINMENT II LLC
d/b/a 1 OAK, SCOTT SARTIANO and
RICHIE AKIVA,

         Defendants.
------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS

### PRELIMINARY STATEMENT

Plaintiffs' motion to dismiss Defendants' counterclaims is ill-timed and misguided. Plaintiffs' motion as to the counterclaim asserted against Defendants Netzai Vargas ("Vargas") and Jimmy DeJesus ("DeJesus") in Defendants' Answer to Plaintiffs' Amended Complaint, is premature or mooted because Defendants did not interpose a counterclaim against Vargas and DeJesus in their Answer to the Plaintiffs' Second Amended Complaint and Amended Answer to the Plaintiffs' Second Amended Complaint.

Plaintiffs' motion concerning the counterclaim against Plaintiff Tarale Wulff ("Wulff") is based upon the fallacious premise that the counterclaim asserts Wulff converted the property of 17TH Street Entertainment II LLC d/b/a 1 OAK ("1 OAK"). In reality, however, 1 OAK's counterclaim asserts that Wulff's conduct "resulted in the conversion" of 1 OAK's property. In

other words, it does not assert that Wulff converted 1 OAK's property, but rather that she aided and abetted the conversion of 1 OAK's property.

Defendants' Amended Answer to Plaintiffs' Second Amended Complaint properly pleads that the conversion of 1 OAK property occurred; Wulff was aware of same; the conversion resulted from Wulff's conduct; and Wulff thereby substantially assisted or facilitated the conversion. Defendant 1 OAK, therefore, has properly pled that Wulff aided and abetted the conversion of 1 OAK's property – a cognizable claim for relief under New York law.

As Defendant 1 OAKs' extant counterclaim against Wulff is properly pleaded and grounded in law, Plaintiffs' motion to dismiss this counterclaim should be denied in its entirety.

## STATEMENT OF FACTS

The salient facts are set forth in the Supporting Affidavit of Jacqueline Akiva and are respectfully incorporated by reference herein.

## ARGUMENT

### DEFENDANT 1 OAK PROPERLY PLEADED ITS COUNTERCLAIM FOR AIDING AND ABETTING CONVERSION AS AGAINST PLAINTIFF TARALE WULFF

In order to prove a party aided and abetted tortious conduct under New York law, the claimant party must establish the tort occurred; the party claimed against was aware of the tortuous conduct; and said party substantially assisted in the commission of the tort. See, Marketxt Holdings Corp. v. Engel & Reiman, P.C., 2010 WL 891003, 4, 7 (S.D.N.Y. 2010) ("Under New York law, a plaintiff must adequately allege three elements in order to make out a claim for aiding and abetting tortious conduct: 'the existence of a primary violation, actual knowledge of the violation on the part of the aider and abettor, and substantial assistance.'")

Under New York law, aider and abettor liability can extend to the tort of conversion. Calcutti v. SBU, Inc., 273 F.Supp.2d 488, 493 (S.D.N.Y. 2003), *accord* U.S. v. District Council of New York City, 2007 WL 2697135, 16 (S.D.N.Y. 2007). In Calcutti, the Court stated:

> In order to state a claim against BDO for aiding and abetting the alleged common law conversion committed by SBU, Monaco must allege: (1) the existence of a primary violation; (2) knowledge of this violation on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in the achievement of the primary violation. *See Morin v. Trupin,* 711 F.Supp. 97, 112 (S.D.N.Y.1989); *Oei v. Citibank,* 957 F.Supp. 492, 520 (S.D.N.Y.1997); *Lindsay v. Lockwood,* 625 N.Y.S.2d 393, 397 (1994); *see also IIT v. Cornfeld,* 619 F.2d 909, 921 (2d Cir.1980) (elements of aiding and abetting as applied in securities fraud context).

Here, Defendant 1 OAK pleaded (and it is not denied) that Wulff knowingly participated in the use of an invalid or ineffective credit card to permit the conversion of 1 OAK's property. See, Paragraphs 162-170 of Defendants' Answer to Amended Complaint and Counterclaims; see also Paragraphs 186-196 of Defendants' Amended Answer to Second Amended Complaint and Counterclaim. Unquestionably and indisputably, the conversion occurred with Wulff's knowledge. Whether Wulff acted upon an inexplicable instruction from her manager is in dispute, but Defendant 1 OAK pleaded a cognizable claim for relief and Plaintiffs' motion should be denied.

To the extent Plaintiffs contend Defendant 1 OAK's counterclaims were motivated by a retaliatory motive, Plaintiffs' contentions are without merit. With regard to Defendant 1 OAK's counterclaim against Wulff, such counterclaim is properly pleaded as discussed above and viable. Defendant 1 OAK has experienced difficulty in recouping the value of the property which was converted from 1 OAK as a result of Wulff's conduct. When Plaintiff Wulff sued 1 OAK, 1 OAK was well within its rights to attempt to recoup the value of its converted property by asserting a counterclaim against Wulff. It also cannot be genuinely disputed that 1 OAK is

entitled to receive an offset from any amounts allegedly due Wulff from Wulff's claims against Defendants, if Wulff is proven to have aided and abetted in the conversion of 1 OAK property. Wulff should not be permitted to escape liability for the substantial loss she caused 1 OAK to sustain and potentially profit from her misconduct by characterizing the valid counterclaim against her as retaliatory.

As to Defendant 1 OAK's counterclaim against Vargas and DeJesus, said counterclaim also has merit. Several of 1 OAK's patrons were victimized by theft of their personal possessions while at 1 OAK. 1 OAK is believed to have lost customers as a result of these thefts. The thefts ceased when Vargas and DeJesus left the employ of 1 OAK. 1 OAK believed one or more of its employees, including Vargas and DeJesus played a role in the theft(s) of personal property from patrons. In any event, Defendant 1 OAK has decided to withdraw its counterclaim against Vargas and DeJesus based upon the Court's reaction to said counterclaim at the preliminary conference in this case.

Contrary to Plaintiffs' assertions, the timing of Defendant 1 OAK's interposition of the counterclaims are not indicative of any retaliatory motive. Defendant 1 OAK decided not to pursue its respective claims against Wulff, Vargas and DeJesus earlier because the expected costs and legal fees of pursuing such litigations served as a deterrent for prosecution of said claims. 1 OAK believed the costs and legal fees associated with prosecuting such claims would likely have substantially reduced, negated or even exceeded any potential recovery collected from Wulff, Vargas, and DeJesus. Defendant 1 OAK decided to pursue its claims against Wulff, Vargas, and DeJesus to offset any amounts potentially due them because 1 OAK will now incur said costs and legal fees whether in its defense of this litigation or in prosecution of its claims.

If anything, the timing of Defendant 1 OAK's interposition of the counterclaim against Wulff demonstrates Defendant 1 OAK's vigilance in pursing its rights against Wulff. Indeed, Defendant 1 OAK asserted its counterclaim against Wulff less than four (4) months after Wulff engaged in acts which facilitated the conversion of 1 OAK's property- - well within three (3) year statute of limitations for conversion. See Marketxt, *supra,* Vigilant Ins. Co. of America v. Housing Authority of City of El Paso, Tex., 87 N.Y.2d 36, 44 (1995). By contrast, Wulff tellingly did not complain of alleged wage and hour violations by Defendants until years after she was purportedly mistreated.

## POINT II

### DEFENDANTS ARE ENTITLED TO REFRAIN FROM INTERPOSING THE COUNTERCLAIM AGAINST DEFENDANTS VARGAS AND DEJESUS IN THEIR ANSWER TO THE SECOND AMENDED ANSWER

There is only one counterclaim in question. The counterclaim against Vargas and DeJesus was not interposed in the Defendants' Answer to the Plaintiffs' Second Amended Complaint and Amended Answer to the Plaintiffs' Second Amended Complaint. Defendant 1 OAK has the right to withdraw the claim as no responsive pleading was served to that counterclaim.[1] Federal Rules of Civil Procedure Rule 41(c) states:

> **(c) Dismissing a Counterclaim, Crossclaim, or Third-Party Claim.** This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim. A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made:
>
> **(1)** before a responsive pleading is served; or
>
> **(2)** if there is no responsive pleading, before evidence is introduced at a hearing or trial.

---

[1] Plaintiffs' Second Amended Complaint does not contain any admissions or denials of the counterclaims asserted in Defendants' Answer to Plaintiffs' First Amended Complaint and Plaintiffs served no Reply to said Counterclaims.

Plaintiffs' motion to dismiss Defendants' counterclaims does not constitute a "responsive pleading." See, American Home Assurance Company v. Altman Specialty Plants, Inc., 2009 WL 222158, *3 (S.D.N.Y. 2009)("In construing the term 'responsive pleading within the meaning of Rule 15[,],' this Court refers to Federal Rule of Civil Procedure 7(a), which 'define[s] pleadings to include a complaint, an answer, a reply to counter-claim, an answer to a cross-claim, a third party complaint, and a third party answer,' citing to, W.B. David & Co., Inc. v. De Beers Centernary AG, 2005 WL 3704690, *2 (S.D.N.Y. 2005).

In any event, dismissal of that counterclaim is appropriate at this juncture. Defendant 1 OAK meets the factors for voluntary dismissal as set forth in Fox Industries, Inc. v. Gurovich, 2009 WL 393949, 4 -5 (E.D.N.Y. 2009):

> The following factors are relevant in determining whether to grant a voluntary dismissal without prejudice pursuant to Rule 41(a) (2):(1) the plaintiff's diligence in bringing the motion; (2) any "undue vexatiousness" on the plaintiff's part; (3) the extent to which the suit has progressed, including defendant's efforts and expense in preparation for trial; (4) the duplicative expense of relitigation; and (5) the adequacy of plaintiff's explanation for the need to dismiss. *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir.1990) (citations omitted).

In this case, voluntary dismissal should be permitted because: (a) Defendant 1 OAK responded promptly in withdrawing its counterclaim against Vargas and DeJesus after the Court expressed skepticism about the viability of such counterclaim; (b) dismissal at this early juncture shows the absence of "undue vexatiousness;" (c) the action is in a preliminary stage as no discovery responses have been exchanged; (d) this early juncture reduces any purported cost of relitigation; and (e) making use of the Court's guidance is an excellent reason to dismiss this counterclaim.

Consequently, whether by voluntary dismissal, refraining from interposing this counterclaim in the Answer to the Second Amended Complaint or by virtue of motion, should it be necessary, this counterclaim is no longer extant.

## CONCLUSION

Wherefore, it is respectfully requested that Plaintiffs' Motion to Dismiss be denied in its entirety and that Defendants be awarded such other and further relief as this Court deems just and proper.

Dated: Mineola, New York
       June 16, 2010

                          Meltzer Lippe Goldstein & Breitstone, LLP

                          By _____
                               Richard M. Howard (RMH-2932)

                          Attorneys for Defendants
                          190 Willis Avenue
                          Mineola, New York 11501
                          (516) 747-0300